IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAIL MCCANCE, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No.: 2:24-cv-00660 |
| | : | |
| v. | : | |
| | : | |
| THE VERLAND FOUNDATION, INC., | : | |
| | : | |
| *Defendant*. | : | |

**COMPLAINT**

AND NOW, comes the Plaintiff, Gail McCance, by and through her undersigned counsel, Sean A. Casey, Esquire, and files the following Complaint:

**Nature of the Action**

This is an action brought pursuant to the Americans with Disabilities Act Amendment Act (ADAAA), as amended 42 U.S.C. §12101 *et. seq.*, the Family and Medical Leave Act of 1993, as amended, the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S.A. §19, *et seq.*, as well as for retaliation under the various statutes, and the creation of a hostile work environment. The Plaintiff, Gail McCance, seeks declaratory, injunctive, and compensatory relief for the discriminatory conduct, retaliation, and hostile work environment she endured, and for being terminated from her position by the Defendant in this matter.

**Parties**

1. The Plaintiff, Gail McCance is a female individual, approximately fifty-six (56) years of age, and currently resides at 118 Duncan Drive, Butler, PA 16001.

2. At all times relevant hereto, the Plaintiff was a qualified individual, and otherwise possessed of all qualifications necessary to perform the essential functions of the job.

3. The Defendant, The Verland Foundation, Inc., is an employer within the meaning of the Act, with a place of business located at 212 Iris Road, Sewickley, PA 15143.

4. The Defendant is an employer with over fifty (50) employees and an employer within the meaning of the FMLA, and the Americans with Disabilities Act Amendments Act.

**Jurisdiction and Venue**

5. This Court has jurisdiction over this Complaint pursuant to the Americans with Disabilities Act Amendments Act, 42 U.S.C. §12101 *et seq*., and the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.,* and 28 U.S.C. §§1331, 1343, and 1367.

   A. Also, pursuant to 28 U.S.C. 1334 (3) and (4), which gives the district court's jurisdiction over actions to secure civil rights extended by the United States government.

   B. Also, pursuant to 28 U.S.C. §1367 giving the district court jurisdiction over state law claims.

6. The Court may also maintain supplemental jurisdiction over state law claims set forth herein (or later added) pursuant to 28 U.S.C. §1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

7.     Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b)(c).

**Factual Background**

8.     Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

9.     Ms. McCance is a female individual, approximately fifty-six (56) years of age, that currently resides at 118 Duncan Drive, Butler, Pennsylvania 16001.

10.    Ms. McCance is filing this Complaint against her former employer, The Verland Foundation, Inc., with a place of business located at 212 Iris Road, Sewickley, Pennsylvania 15143.

11.    Ms. McCance was first hired by The Verland Foundation, Inc., on or about June 13, 2016, as a full time RN staff nurse at the Sewickley main campus.

12.    During the Plaintiff's course of employment, her title had changed to charge nurse, assistant director of nursing, and lastly, she was a program director.

13.    On or about December 2, 2019, the Plaintiff accepted a transfer as program director to the Verland ORC in Natrona Heights, at the request of the company's CEO, Bill Harriger.

14.    The Plaintiff assumed the duties due to an abrupt departure of the prior program director at that location.

15.    The Plaintiff learned that the current health services coordinator at the ORC was retiring, which occurred only a couple days after she began at that location.

16.    The Plaintiff was never told that the company did not intend on replacing the individual that retired.

3

17.     The Plaintiff had been asked by the CEO, Mr. Harriger, to assess whether there was a need or not for this position to be filled, which the Claimant did, and then informed him very early on that she did need a health services coordinator.

18.     The Plaintiff's own position turned into that of a program director and a health services coordinator, which essentially put her on call twenty-four (24) hours per day, seven (7) days per week, and three hundred sixty-five (365) days per year, as she did not have adequate backup.

19.     This was especially the case after the COVID pandemic hit.

20.     At times, this required her to work over twenty-six (26) consecutive hours, which is both unsafe and in violation of applicable regulations.

21.     Much of this time was spent essentially filling in as a nurse when the facility was short staffed and unable to get another RN to cover the shift.

22.     During this period, the Plaintiff was not paid the time and a half rate that she should have received as an RN.

23.     The Plaintiff had to cancel numerous approved PTO days as a result of this situation, as well.

24.     This included the cancelation of many important family events and family vacations, and as a result has caused significant stress on her home life and marriage.

25.     Beginning in February of 2020, the Plaintiff made many requests to management for assistance and increased staffing to help alleviate the situation, all of which went unanswered.

26.     On or about December 28, 2021, the Plaintiff had a meeting with senior management and stressed the necessity of hiring a health service coordinator and having the facility adequately staffed.

27. In January and February of 2022, the Plaintiff worked approximately 170-180 hours of overtime.

28. She was still working as program director and handling all of the health service coordinator duties, along with working as an RN due to COVID related issues.

29. This led to the Plaintiff becoming mentally and emotionally exhausted, for which she eventually sought medical treatment.

30. In April of 2022, the new company policy that required employees to receive booster shots for COVID had created additional staffing issues.

31. Also in April of 2022, the Plaintiff was interviewed and ultimately suspended without pay for allegations of psychological abuse, which Plaintiff vehemently denied.

32. It was ultimately determined to be unintentional, and she was returned to work without pay.

33. The Plaintiff is aware that when other employees return from suspension that they always receive their pay they missed, but this was not the case for her.

34. On or about June 2, 2022, the Plaintiff was put on a performance improvement plan (PIP), by Nicole Garcia and Melissa Richards.

35. The PIP was based on several issues that were directly related to the understaffing issues, and it was to last sixty (60) days.

36. This was actually the first time the Plaintiff had ever heard of a PIP, as they had never used one in coaching and had not used one since, nor is it given as a tool to use.

37. The Plaintiff regarded the PIP as retaliatory, as it was directly related to her complaints of understaffing and ordered her to essentially fix the problem without addressing the primary cause, which was the understaffing of the facility.

38. The Plaintiff successfully completed the PIP in August of 2022, however doing so put an even greater strain on her physical and mental health.

39. In September of 2022, the Plaintiff had presented the Defendant with a request for accommodation limiting her to forty hours per week and not having to work extended shifts.

40. Instead of honoring those requests, the Defendant only responded by telling the Plaintiff that she is not to work more than forty hours, knowing full well that is not possible without an increase in staffing or some other assistance to cover shifts.

41. On Friday, October 14, 2022, Melissa Richards and Nicole Garcia were made aware that the Plaintiff would have to work 24 hours straight over the weekend if they did not provide her some additional staffing or person to assist.

42. There was no substantive response from either Richards or Garcia, and the Plaintiff ended up working 24 hours straight.

43. It should be noted that Richards did suggest that the Plaintiff take a nap, which clearly would have been a violation of their policies and subjected the Plaintiff to discipline that could have included termination.

44. A majority of the responses from Richards and Garcia were suggestions to the Plaintiff that she is not properly managing her time, and they ignored the issues of understaffing.

45. Essentially human resources and management were gaslighting the Plaintiff into thinking the problem was entirely her, instead of addressing the very clear issue of staffing and the back up of work created during the pandemic.

46. In October of 2022, the Plaintiff was then being told to clock in and out in order to outline a process that was more "auditable."

47. The Plaintiff was also told to work three, 12-hour shifts, and to dual task in order to keep those hours.

48. The Plaintiff believes that this course of action has been intentional, knowing that the situation has created an extraordinarily stressful environment for the Plaintiff.

49. The Plaintiff believes that the Defendant's goal of this conduct was to create a situation so hostile that the Plaintiff would quit her current position.

50. Ms. McCance did not begin having problems with the Defendant until she made repeated complaints concerning the staffing issues, the unsafe number of hours she was being forced to work, and the disclosure of her medical conditions.

51. Defendant repeatedly failed to engage in the interactive process or provide accommodations.

52. On or about October 24, 2022, the Plaintiff filed a Charge with the EEOC against the Defendant in this matter, and it was assigned Charge Number: 533-2023-00260.

53. On or about November 11, 2022, the Plaintiff was terminated by the Defendant.

54. The Plaintiff believes these actions were discriminatory and retaliatory on behalf of the employer and seeks redress of her rights.

55. On or about April 26, 2023, the Plaintiff filed a Second Charge with the EEOC against the Defendant in this matter, and it was assigned Charge Number: 533-2023-01690.

56. The Plaintiff received a right to sue letter from the EEOC for Charge Number: 533-2023-00260, that is dated February 5, 2024. (Exhibit 1).

57. The Plaintiff received a right to sue letter from the EEOC for Charge Number: 533-2023-01690, that is dated February 20, 2024. (Exhibit 2).

## **COUNT I: FAMILY MEDICAL LEAVE ACT**

58. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

59. This matter is brought pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. 2601 *et. seq.*

60. The Plaintiff, Gail McCance, was an employee of the Defendant, and entitled to leave pursuant to 29 CFR 825.112.

61. The Plaintiff maintains that the Defendant violated the FMLA by terminating her for requesting leave.

62. Defendant's actions were done with malice or reckless disregard of Plaintiff's federally protected rights.

63. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT II: DISABILITY DISCRIMINATION: ADAAA & PHRA

64. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

65. The Plaintiff had been diagnosed with several medical conditions, some related to working conditions, making her disabled within the meaning of the ADAAA, this definition would include regarding as or having a history of disability.

66. The Plaintiff had disclosed her medical conditions and requested accommodations, which constituted protected activity under these statutes.

67. The Defendant expressed discriminatory animus and committed discriminatory acts against the Plaintiff in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 et. seq., and the Pennsylvania Human Relations Act, 43 P.S. §951 *et. seq*.

68. The Plaintiff was treated differently than other employees.

69. Defendant's actions were done with malice or reckless disregard of Plaintiff's federally protected rights.

70. The Defendant did not address or investigate the discriminatory and retaliatory conduct, or hostile work environment that was occurring in the workplace to the Plaintiff, and by implication created the environment that seemingly condones such conduct.

71. The Plaintiff filed a Charge with the EEOC on or about October 24, 2022, and was terminated on November 11, 2022.

72. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

### **COUNT III: RETALIATION – ADAAA, FMLA, & PHRA**

73. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

74. The Plaintiff had disclosed her medical conditions, requested accommodations, need for leave, and rights to be free of discrimination on multiple occasions with the Defendant, which constituted protected activity under the ADAAA, FMLA, and PHRA.

75. Plaintiff was harassed, humiliated, discriminated against, and terminated by the Defendant in retaliation for disclosing her medical condition, and asserting her rights under the ADAAA and FMLA, and by raising the issues of discriminatory actions.

76. Not only did the Defendant not take measures to correct the discriminatory nature of their criteria, but they engaged in activities to question, discipline, and terminate the Plaintiff.

77. The Plaintiff exercised rights and opposed discriminatory conduct prohibited by the ADAAA, FMLA, and PHRA.

78. Under the ADAAA, FMLA, and PHRA, a retaliatory action by an employer toward an employee for exercising their statutory rights is a violation of that statute and against public policy.

79. The Defendant's conduct in retaliation for Plaintiff's complaints constitutes unlawful retaliation in violation of the ADAAA, FMLA, and PHRA.

80. On or about October 24, 2022, the Plaintiff filed a Charge with the EEOC against the Defendant in this matter, and shortly thereafter she was terminated by the Defendant on November 11, 2022.

81. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT IV: HOSTILE WORK ENVIRONMENT

82. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

83. Plaintiff had repeatedly endured acts of discrimination and retaliation from the Defendant.

84. Plaintiff had reported discrimination to the Defendant, to various agents employed by the Defendant.

85. As described above, Defendant subjected the Plaintiff to a hostile work environment on the basis of her disability, against the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 et. seq., and the Family Medical Leave Act (FMLA).

86. The Plaintiff's superiors and agents of the Defendant increasingly responded to her in a manner that was aggressively hostile, making the Plaintiff feel uncomfortable and unsafe.

87. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress, and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

A) Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of the FMLA, ADAAA, PHRA, retaliation under the various statutes, and creation of a hostile work environment;

B) Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provide proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C) Order Defendant to make whole Gail McCance, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, compensate her for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D) Order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

E) Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F) Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G) Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted,

/s/ Sean A. Casey
Sean A. Casey, Esq. (PA I.D. 79806)

**SEAN A. CASEY, ATTORNEY AT LAW**
The Pickering Building
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
T: (412) 201-9090
F: (412) 281-8481
Email: sean@caseylegal.com

Counsel for Plaintiff,
Gail McCance